IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02287-PAB-KMT
       (Consolidated with Civil Action No. 13-cv-03388-PAB-KMT)

MSPBO, LLC,

        Plaintiff,

v.

GARMIN INTERNATIONAL, INC.,

        Defendant.

_____

**ORDER**
_____

        This matter is before the Court on the Motion to Dismiss, or in the Alternative,

Stay the Litigation Pending Arbitration [No. 13-cv-03388 (Docket No. 19)][1] filed by

defendant Garmin International, Inc. ("Garmin").

        Plaintiff MSPBO, LLC ("MSPBO") commercializes patent rights in the field of

measurement and display of travel and fitness information.  Docket No. 1 at 1-2, ¶ 3.

MSPBO claims that it acquired the rights to United States Patent No. 6,744,375 (the

"'375 patent").  *Id.* at 2, ¶ 5.

        On October 26, 2006, PhatRat Technology, Inc. ("PhatRat") and Garmin entered

into an agreement entitled "RELEASE, COVENANT NOT TO SUE AND PATENT

LICENSE" (the "agreement"), which resolved a suit between PhatRat and Garmin

_____

        [1]This case, originally captioned *MSPBO, LLC v. Adidas North America, Inc. et al.*, was consolidated with *MSPBO, LLC. v. Garmin International, Inc.*, No. 13-cv-03388 (*MSPBO II*).  Docket No. 41.  Citations to the record in *MSPBO II* will be cited as "*MSPBO II*" followed by the corresponding docket number.  All other citations to the record refer to the consolidated action unless otherwise indicated.

involving patents owned by PhatRat.  *MSPBO II*, Docket No. 20 (public entry at Docket

No. 19-1).  The agreement states, in relevant part:

> <u>Agreement to Arbitrate.</u>  In consideration for the promises and covenants set
> forth in this Agreement, the Parties hereby agree that any future dispute
> between the Parties arising out of or relating to this Agreement, including but
> not limited to, whether any future Garmin product is a Licensed Product, shall
> be resolved through confidential, binding arbitration in either Kansas City,
> Missouri or Johnson County, Kansas.
>
> *     *     *
>
> <u>Initiation.</u>   Either Party may initiate an arbitration proceeding under this
> Agreement by serving a written demand for arbitration upon the other Party
> specifying the specific issues in dispute.  Any such demand shall be served
> according to the notice provisions of this Agreement.

*Id.* at 7.  The agreement defines the "Parties" as PhatRat and Garmin.  *Id.* at 3.  The

agreement states that PhatRat and its affiliates release Garmin from all claims "arising

out of or relating to the Licensed Patents," *MSPBO II*, Docket No. 20 at 3, ¶ 3.1, and

that "PhatRat, for itself and its successors, assigns, and transferees" will not bring suit

against Garmin or its affiliates for claims "arising out of or relating to the Licensed

Products."  *Id.* at 4, ¶ 4.  The agreement defines "affiliate" as "any individual,

association, partnership, corporation or other entity that controls, is controlled by, or is

under common control with a named individual or entity."  *MSPBO II*, Docket No. 20 at

2.  "'**Control**' means the power to direct or cause the direction of the management and

policies of an individual or entity, whether through the ownership of voting securities, by

contract, or otherwise."  *Id.* (emphasis in original).

On August 26, 2013, MSPBO filed suit against Adidas, alleging that Adidas

infringed on U.S. Patent No. 6,744,375.[2]   Docket No. 1 at 1-2, ¶ 3.[3]   On December 16, 2013, MSPBO filed suit against Garmin, alleging infringement of the same patent. *MSPBO II*, Docket No. 1 at 1-2, ¶ 3.   Garmin subsequently filed suit against PhatRat in the District Court of Johnson County, Kansas, seeking an order compelling PhatRat to arbitrate the issue of whether MSPBO is an "affiliate" of PhatRat under the terms of the agreement.   *MSPBO II*, Docket No. 19-2 at 4, ¶ 15; Docket No. 19 at 2.   On January 9, 2014, Garmin filed the present motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (3), arguing that MSPBO is required to arbitrate its claims.   *MSPBO II*, Docket No. 19 at 1. Garmin requests that MSPBO's claims in this case be dismissed or, in the alternative, that the case be stayed pending arbitration.

On January 30, 2014, the actions against Adidas and Garmin were consolidated. Docket No. 41.   On May 7, 2014, after the present motion was fully briefed, the District Court of Johnson County, Kansas ordered Garmin and PhatRat to proceed to arbitration.   Docket No. 69-2 at 2.   MSPBO is not a party to the arbitration.   Docket No. 68 at 3; Docket No. 69-1 at 11-12, p. 10:11-11:2.   On July 7, 2014, MSPBO voluntarily dismissed its claims against Adidas, *see* Docket No. 72, rendering moot Adidas' motion to dismiss.   *See* Docket No. 77.

---

[2]The '375 patent is not explicitly mentioned in the agreement.   *See MSPBO II*, Docket No. 20 at 2.   However, the agreement defines the term "Licensed Patents" as those patents related to those listed in the agreement and "any patents and applications owned by and/or assigned to PhatRat or its Affiliates, now or in the future."   *Id.*   Plaintiff does not appear, for the purposes of this motion, to dispute that the '375 patent is a licensed patent as contemplated by the agreement.

[3]The patent's inventor is listed as Dr. Daniel Groos, whose rights were transferred to MSPBO.   Docket No. 1 at 2, ¶¶ 4-5.

## I. STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  Here, Garmin attacks the factual basis for subject matter jurisdiction.  Therefore, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."  *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997).  "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances."  *Id.*  Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

In reviewing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), a court may examine facts outside the complaint, but "all well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by defendant's affidavits."  *Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1260 (10th Cir. 2012) (quotation marks omitted).  "'The court must draw all

4

reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Id.* at 1261 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2004)).

## II.  ANALYSIS

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4]  The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and under this policy, doubts concerning the scope of arbitrable issues are resolved in favor of arbitration.  *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  The FAA mandates a stay of a judicial proceeding where the parties have executed a written arbitration agreement covering the dispute.  9 U.S.C. § 3.

### A.  Compelling a Non-Signatory to Arbitrate

Garmin argues that "the dispute between the parties is whether MSPBO is an 'affiliate' of PhatRat under the settlement agreement" and that "[b]ecause this dispute relates to the scope of the agreement, this is a question that must only be decided by the arbitrator." *MSPBO II*, Docket No. 19 at 2.  Garmin's brief cites a single case, *Stephen J. Smith Trust v. Ethicon, Inc.*, No. 06-cv-02371-MSK-MEH, 2007 WL 3226162

---

[4]Although neither party references the FAA, "in cases falling within a court's jurisdiction, the Act makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.'" *Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  The Court therefore concludes that the FAA applies.

(D. Colo. Oct. 25, 2007), in support of its argument that the agreement's arbitration clause covers the dispute between the parties.  *MSPBO II*, Docket No. 19 at 3. Garmin's arguments are deficient in multiple respects.

Generally, courts have the authority to compel arbitration only between the signatories of an arbitration agreement.  *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). However, the FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)."  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).  "'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  *Id.* (internal quotation marks omitted); *see also E.I. DuPont*, 269 F.3d at 194 ("a non-signatory cannot be bound to arbitrate unless it is bound under traditional principles of contract and agency law" (internal quotation marks omitted)).  Courts will accordingly compel signatories to arbitrate with non-signatories in certain circumstances.  *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011) (unpublished) (noting that courts have applied estoppel principles to require signatories to arbitrate with a non-signatory); *Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.*, 176 F. Supp. 2d 1091, 1097-98 (D. Colo. 2001) (noting that courts have bound a signatory to arbitrate with a non-signatory based on a close relationship between them and the fact that the claims were intertwined with the underlying contract obligations).

6

Garmin's opening brief asserts that MSPBO underwent "post filing corporate reorganization (done in an apparent attempt to distance MSPBO from PhatRat)." *MSPBO II*, Docket No. 19 at 1.  Garmin's reply brief claims that Paul Jonjak

> created both the PhatRat and MSPBO entities, listed his home address as the principle [sic] place of business for both businesses, executed the original assignment of the asserted patent on behalf of MSPBO, recorded that assignment in the Patent Office listing his home address, financially benefited [sic] from the proceeds of the PhatRat litigation and will financially benefit from any proceeds received by MSPBO in this litigation.

Docket No. 44 at 1.  Garmin also claims that MSPBO is "not a functioning business in that it does not make anything, sell anything, have any customers nor provide any services."  *Id.* at 2.  Garmin does not cite to the record or otherwise support its assertions.  MSPBO responds that, during discovery, it produced records reflecting the relationship between MSPBO and PhatRat.  *MSPBO II*, Docket No. 29 at 4.  In interrogatory responses, MSPBO admits that it was initially owned and controlled by Mr. Jonjak, but states that MSPBO was sold to Deer Creek Capital, which is controlled by Francis Knuettel II, prior to MSPBO's acquisition of the '375 patent.  *MSPBO II*, Docket No. 29-2 at 5-6.[5]  MSPBO further states that neither Mr. Jonjak nor PhatRat has any ownership or control over Deer Creek Capital or MSPBO.  *Id.* at 6.

Garmin fails to set forth a legal theory or supporting facts under which MSPBO, a non-signatory, could be bound by the agreement's arbitration clause.  In *Stephen J. Smith*, unlike this case, plaintiff and defendant were parties to the agreement containing the arbitration clause.  2007 WL 3226162, at *1.  Thus, *Stephen J. Smith* provides no

---

[5]Garmin's assertion that Mr. Knuettel is a "figurehead" with "a history of participating in corporate shell games" is without support and will be disregarded.  *See* Docket No. 44 at 1.

support for Garmin's position.  Moreover, even if Garmin's unsupported assertions are accepted as true, Garmin falls far short of the threshold showing required under traditional principles of contract law.  *See, e.g.*, *Altresco Philippines, Inc. v. CMS Generation Co.*, 1997 WL 186257, at *6 (10th Cir. April 17, 1997) (holding that non-signatory entity is alter ego of signatory upon a showing that the non-signatory was a "mere instrumentality . . . used to perpetuate a fraud, illegality or inequity"); *Cherry Creek*, 176 F. Supp. 2d at 1098 (explaining that one theory of equitable estoppel holds non-signatories to an arbitration clause if the party seeking to compel arbitration shows that "the non-signatory knowingly exploit[ed] the agreement containing the arbitration clause").

Garmin cites *Adams v. ModernAd Media, LLC*, No. 12-cv-00513-PAB-MEH, 2013 WL 674024 (D. Colo. Feb. 25, 2013), in support of its argument that a non-signatory can be compelled to arbitrate.  The plaintiff in *Adams*, Willem Adams, brought claims for wrongful termination against his employer, ModernAd, and ModernAd's president, Warren Rustin.  *Id.* at *1.  The employment agreement between Mr. Adams and Modernad contained an arbitration clause and a clause stating that "any Affiliate of the Company shall have the same rights as the Company under this Agreement."  *Id.* Although Mr. Rustin was not a signatory to the employment agreement, the Court determined that defendants could compel Mr. Adams to arbitrate his claims against Mr. Rustin because of the "close relationship between the claims" brought against ModernAd and Mr. Rustin and because Mr. Rustin arguably fell within the affiliate clause.  *Id.* at *5.  Here, it is not clear that a similar relationship between the parties

8

exists, and the agreement between PhatRat and Garmin contains no clause placing upon PhatRat's affiliates equal rights and obligations under the agreement.

The Court finds that Garmin has failed to provide a sufficient basis upon which to conclude that MSPBO is bound by the agreement's arbitration clause. As such, regardless of whether the well pleaded facts in MSPBO's complaint are taken as true, Garmin's motion to dismiss is denied. *See* Fed. R. Civ. P. 12(b)(1) and (3).

### B.  Staying the Case Pending Arbitration Between PhatRat and Garmin

Garmin also argues that this case should be stayed pending arbitration. Docket No. 44 at 3. Garmin contends that the arbiter's decision in the Garmin/PhatRat arbitration "would resolve this case" such that the case should be dismissed or stayed pending arbitration. *Id.* MSPBO responds that it was not a party to the Kansas case or to the ordered arbitration and that an arbiter's decision on the issue would not bind MSPBO. Docket No. 68 at 1-2; *see also MSPBO II*, Docket No. 29 at 9-10 ("Even if Garmin succeeds in compelling arbitration with non-party PhatRat, an arbitral decision will not bind MSPBO"). Even assuming that the arbiter in the Garmin/PhatRat arbitration determines that MSPBO is an affiliate of PhatRat under the agreement, Garmin would, at a minimum, be required to show that the arbiter's decision had a preclusive effect on this litigation. *See Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001) ("Issue preclusion bars relitigation of an issue if: (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior

9

proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.").  Garmin makes no attempt to address this issue.[6]  For the foregoing reasons, the Court is not satisfied that the issues involved in this suit are "referable to arbitration under such an agreement."  9 U.S.C. § 3.  Thus, the Court finds no basis upon which to stay this case pending the outcome of arbitration between PhatRat and Garmin.

## III.  CONCLUSION

For the reasons discussed above, it is

**ORDERED** that Defendant Garmin International, Inc's Motion to Dismiss, or in the Alternative, Stay the Litigation Pending Arbitration [No. 13-cv-03388 (Docket No. 19)] is **DENIED.**


DATED September 11, 2014.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[6]Additionally, the agreement's arbitration clause contemplates arbitration only between "the parties," Garmin and PhatRat.  Docket No. 20 at 7.  Thus, even if an arbiter were to decide that MSPBO is an affiliate of PhatRat, it is not clear that the arbiter's decision would be dispositive as to whether MSPBO is required to arbitrate under the agreement.